1   KAMALA D. HARRIS
    Attorney General of California
2   SUSAN FIERING, State Bar No. 121621
    Supervising Deputy Attorney General
3     1515 Clay Street, 20th Floor
      P.O. Box 70550
4     Oakland, CA  94612-0550
      Telephone:  (510) 622-2142
5     Fax:  (510) 622-2270
      E-mail:  Susan.Fiering@doj.ca.gov
6   *Attorneys for Plaintiff*
    *California Department of Toxic Substances Control*

7

8                  IN THE UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA»

10

11

12  **Department of Toxic Substances Control,**       No. CIV F-96- 5879 LJO/DLB (Consolidated
                                                        Shafter Cases)
                                           Plaintiff,
13                                                      **CONSENT DECREE**

14                        v.

15  **Brown & Bryant, Inc., et al.,**

16                                        Defendants.

17

18        **INTRODUCTION**

19        The parties to this Consent Decree are the CALIFORNIA DEPARTMENT OF TOXIC

20  SUBSTANCES CONTROL ("DTSC"), BNSF RAILWAY COMPANY ("BNSF") (formerly

21  Burlington Northern and Santa Fe Railway Company) and HERCULES INCORPORATED

22  ("Hercules"), collectively "the Parties."  The Parties enter into this Consent Decree to resolve this

23  action and to ensure the cleanup of that certain contaminated site located within the City of

24  Shafter on two parcels of land and a railroad right-of-way adjacent to the parcels referred to as the

25  "Shafter Site" and more fully described herein.  DTSC filed the original complaint in this matter

26  against BNSF, Hercules, and others pursuant to the Comprehensive Environmental Response,

27

28

                                        1

Compensation, and Liability Act, 42 U.S.C. § 9601, *et seq.* ("CERCLA") on January 14, 1998.

DTSC filed the Second Amended Complaint on November 6, 1998 (hereafter "Complaint").

The Court consolidated the DTSC action, *DTSC v. Brown & Bryant, Inc., et al.*, Case No.
CIV-F-98-5050, with two earlier actions which had been filed concerning the Shafter Site:
*Atchison Topeka & Santa Fe Railway Co., et al. v. Brown & Bryant, Inc., et al.*, Case No. CIV-F-
92-5068; and *Atchison Topeka & Santa Fe Railway Co. v. Hercules Incorporated, et al.*, Case No.
CIV-F-96-5879, and directed that "all future pleadings should contain ONLY the LEAD CASE
NUMBER OF CIV-F-96-5879 OWW DLB (member case 98-5050 OWW)."  (These consolidated
actions are referred to herein as the "Consolidated Shafter Cases").

In the Complaint, DTSC asserts that BNSF is the successor in interest to the Atchison,
Topeka and Santa Fe Railway (Atchison) and is the current owner of portions of the Shafter Site;
that Hercules supplied, on both a consignment and direct sale basis, hazardous substances to the
Shafter Site and owned and operated a tank used to store hazardous substances at the Shafter Site;
that the Shafter Site and the tank that Hercules owned are each a "facility" from which there were
releases or threatened releases of hazardous substances, as those terms are defined under
CERCLA; and that BNSF and Hercules are therefore jointly and severally liable for the costs that
have been, and will be, incurred by DTSC in response to releases and threatened releases of
hazardous substances at and from the Shafter Site.

This Consent Decree resolves the claims asserted by DTSC in the Complaint, requires
BNSF and/or Hercules to pay certain response costs that DTSC has incurred and will incur in
connection with the environmental cleanup of  the Shafter Site as specified herein, and requires
BNSF to implement response actions as specified in this Consent Decree and in the Remedial
Action Plan for the Shafter Site that was approved by DTSC on May 21, 2009 ("RAP") (attached
hereto as Exhibit A), and take other actions as specified herein.

This Consent Decree is entered into by DTSC pursuant to its authority under Sections 107
and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613.  DTSC, BNSF, and Hercules agree, and this
Court finds by entering this Consent Decree, that this Consent Decree has been negotiated in

2

good faith and is entered into without the admission of any issue of fact or law, that settlement of this matter will avoid expensive and protracted litigation between the Parties, and that this Consent Decree is fair, reasonable and consistent with the National Contingency Plan, is in the public interest, and will benefit the environment and the community.

NOW THEREFORE, it is ORDERED, ADJUDGED, AND DECREED, as follows:

1.    JURISDICTION

The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and CERCLA, 42 U.S.C. § 9601 *et seq.*  Solely for the purposes of this Consent Decree and the Complaint, BNSF and Hercules agree to submit to the jurisdiction of this Court, to venue in this District and to be bound by the terms of this Consent Decree.

2.    PARTIES BOUND

2.1.   The "Parties" to this Consent Decree are DTSC, BNSF, and Hercules.

2.2.   BNSF and Hercules shall fund and BNSF shall perform certain obligations with regard to the RAP for the Facility as set forth in this Decree.

2.3.   This Consent Decree applies to and is binding upon DTSC, and upon BNSF and Hercules and their respective officers, directors, successors, heirs, and assigns.  Any change in ownership, partnership status or corporate status of BNSF or Hercules, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter BNSF's or Hercules's rights or responsibilities under this Consent Decree.

2.4.   All actions taken by DTSC pursuant to this Consent Decree, including all approvals, reservations of rights, and covenants not to sue are solely those of DTSC and of no other state agencies.

2.5.   BNSF shall be responsible for ensuring that its contractors and subcontractors perform the Work, as defined herein, in accordance with this Consent Decree.

2.6   Neither BNSF nor Hercules admit any fact or liability arising out of or relating to the transactions or occurrences alleged in the Complaint, nor do they acknowledge that any

3

release or threatened release of hazardous substances at or from the Shafter Site constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

3.   BACKGROUND

3.1.   The Shafter Site.

The Shafter Site consists of two parcels of real property located in the City of Shafter, California: Parcel APN 028-190-05 and Parcel APN 028-180-25, and a right of way owned by BNSF adjacent to the parcels of property.  The Site consists of approximately fifteen (15) acres of land.

3.2.   Past/Current Owners and Operators.

Parcel APN 028-190-05 is owned by BNSF (hereafter "BNSF Parcel"); Parcel APN 028-180-25 is owned by Brown & Bryant, Inc. (hereafter "B & B Parcel").

The Complaint alleges that defendant Brown and Bryant, Inc. ("B & B") owned and/or operated an agricultural chemical formulation, distribution, and custom application business that operated on various portions of the Shafter Site that were leased from Atchison or owned by B &B.  The Complaint alleges that during the period that B&B owned and/or operated its business on the Shafter Site, various chemicals, including, but not limited to, 1,2,3-trichloropropane; 1,2-dichloropropane; 1,3-dichloropropane; 1,2-dichloroethane; dinoseb; 1,2-dibromoethane (EDB); toxaphene; DDT; DDE; DDD; kelthane; ammonia; prometryn; toluene; arsenic; xylene; chlordane; 1,2-dibromo-3-chloropropane (DBCP); pentachloronitrobenzene; endrin; ethyl parathion; PCBs; benefin; temik; 2,4,5-T silvex; lindane; and 1,1,2-trichloroethane were released onto the Site, contaminating soils and posing a threat to groundwater.

3.3.   Regulatory History.

On or about May 1983, DTSC inspected the Shafter Site and found B & B to be in violation of California hazardous waste control laws.  Between 1984 and 1988, B & B conducted site investigations to assess the extent of soil and potential groundwater contamination at and around the Shafter Site, and undertook some response actions under the supervision of DTSC.  On or about January 17, 1991, the United States Environmental Protection Agency (EPA) issued

4

an Administrative Order on Consent ("Consent Order") to Atchison pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606.  Atchison conducted a number of response actions at the Shafter Site.  On or about July 23, 1993, DTSC issued an Imminent or Substantial Endangerment Determination Order and Remedial Action Order ("ISE Order") to the defendants named in the Complaint and others pursuant to Health and Safety Code section 25358.3.

> 3.4.   Owners/Operators and Arrangers

>> 3.4.1 The Complaint alleges that BNSF and Hercules are "persons" as that term is defined by Section 101(21) of CERCLA, 42 U.S.C. § 9601(21) and are "liable parties" under Section 107(a) of CERCLA for  costs incurred by DTSC in response to the release or threatened release of hazardous substances at or from the Shafter Site.

> 4.   DEFINITIONS

>> Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them therein.  Whenever terms listed below are used anywhere in this Consent Decree or its exhibits the following definitions shall apply:

>> 4.1   "B&B Parcel" shall mean Parcel APN 028-180-25 which is owned by Brown & Bryant, Inc.

>> 4.2   "BNSF Parcel" shall mean Parcel APN 028-190-05 which is owned by BNSF;

>> 4.3   "Consent Decree" or "Decree" shall mean this Consent Decree and its attachments and exhibits.

>> 4.4   "Contractor" shall mean the individual, company or companies retained by or on behalf of BNSF to undertake and complete the Work.

>> 4.5   "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or State or Federal holiday, the period shall run until the close of business of the next working day.

>> 4.6   "Effective Date" shall mean the date upon which an order by the Court approving the Consent Decree is entered by the Court.

5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.7   "Facility" as used in this Consent Decree shall have the same meaning as that term is defined by Section 101(9) of CERCLA, 42 U.S.C. § 9601(9), and includes the vertical and areal extent of release of hazardous substances at or from the Shafter Site.

4.8   "Future Response Costs" shall mean all costs that DTSC incurs with regard to response actions for the Shafter Site after March 31, 2011, including but not limited to, interest at the rate set by Health and Safety Code section 25360.1.

4.9   "National Contingency Plan" or "NCP" shall refer to the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300.

4.10   "Operation and Maintenance" shall mean all activities required to maintain the effectiveness of the RAP as required under the Operation and Maintenance Plan and Agreement that will be developed by BNSF and approved by DTSC pursuant to the terms of this Consent Decree and the Scope of Work attached hereto as Exhibit B.

4.11   "Past Response Costs" shall mean all costs that DTSC has incurred with regard to the Shafter Site up until March 31, 2011, including, but not limited to, interest at the rate set by Health and Safety Code section 25360.1.

4.12   "Plan(s)" or "Workplan(s)" shall mean the plans and designs developed by or on behalf of BNSF which detail the elements of the Work to be conducted pursuant to this Consent Decree.

4.13   "Remedial Action" shall mean those activities, except for implementation of Operation and Maintenance, (but including the preparation and approval of the Operation and Maintenance Plan and Agreement and preparation and recording of the Land Use Covenant required by the RAP), to be undertaken by BNSF to implement the RAP in accordance with the Scope of Work and the final Remedial Design Documents.

4.14   "Report(s)" shall mean the reports developed by BNSF in compliance with this Consent Decree, detailing the Work and the results of its implementation.

4.15 "Shafter Site" shall mean the two parcels of real property (Parcel APN 028-190-05 and APN 028-180-25), and the right of way owned by BNSF adjacent to these two parcels of property located in the City of Shafter.

4.16 "Work" shall mean the implementation, in accordance with this Consent Decree, of the tasks and activities defined herein, including but not limited to the requirements of Sections 5 and 6; such work as may be modified pursuant to the Section 16 of this Consent Decree; and any schedules or plans required to be submitted to DTSC pursuant to this Consent Decree.

5.    GENERAL OBLIGATIONS RESPECTING WORK TO BE PERFORMED

5.1 BNSF shall perform the work identified in the Scope of Work which is incorporated herein by reference, and is attached hereto as Exhibit B.

5.2.   Compliance With Applicable Laws

BNSF shall carry out this Consent Decree in compliance with all applicable state, local, and federal requirements including, but not limited to, requirements to obtain permits and to assure worker safety and the requirements of the NCP.

5.3.   Access to Shafter Site and Other Properties.

5.3.1 BNSF Access Obligations

BNSF shall secure access to the BNSF Parcel and right-of-way at all reasonable times to DTSC and its respective employees, contractors, and consultants for the purpose of conducting any activity reasonably related to implementation of this Consent Decree, and shall ensure that tenants and/or future owners are also obligated to provide such access.  BNSF and its successors in interest, (including without limitation any tenant or new owner of the BNSF Parcel or of the right-of-way that is part of the Shafter Site), shall refrain from interfering with or adversely affecting the implementation, integrity or protectiveness of any Work performed pursuant to this Consent Decree.  Access to DTSC provided pursuant to this Consent Decree, including pursuant to the Land Use Covenant required in Section 6.1.1, shall be provided without compensation.  BNSF shall not transfer or convey any interest in or alienate the BNSF Parcel or right-or-way, in

7

whole or in part, without providing for access to the BNSF Parcel and right-of-way.  Nothing in this Paragraph is intended nor shall be construed to limit in any way the right of entry or inspection that DTSC or any other governmental agency may otherwise have by operation of any law.  DTSC and its authorized representatives shall have the authority to enter and move safely about all areas at the BNSF Parcel at all reasonable times for purposes of ensuring compliance with this Consent Decree, including, but not limited to: inspecting records, operating logs, sampling and analytic data, and contracts relating to the BNSF Parcel; reviewing the progress of BNSF in carrying out the terms of this Consent Decree; conducting such tests as DTSC may deem necessary; and verifying the data submitted to DTSC by BNSF.

     5.4.   Sampling, Data and Document Availability.

     BNSF and Hercules each covenants and represents that, to the best of its knowledge, it has provided to the other party and to DTSC all sampling, testing, monitoring and other data within its possession, custody or control regarding the environmental condition of the Shafter Site and adjacent properties.  BNSF shall provide DTSC and its authorized representatives with copies of all sampling, testing, monitoring or other data in any way pertaining to the Work undertaken pursuant to this Consent Decree.  BNSF shall inform DTSC at least seven (7) days in advance of all field sampling under this Decree, and shall allow DTSC and its authorized representatives to take duplicates of any samples collected by BNSF pursuant to this Consent Decree.  BNSF shall maintain a central repository of the data, reports, and other documents prepared by it pursuant to this Consent Decree and inform DTSC of the location of the central repository and any changes to its location.

     5.5.   Record Retention.

     BNSF shall preserve all data, final reports and other documents prepared pursuant to this Consent Decree for a minimum of six (6) years after the conclusion of all activities required under the terms of this Consent Decree.  If DTSC requests that some or all of these documents be preserved for a longer period of time, BNSF shall either comply with that request or deliver the documents to DTSC, or permit DTSC to copy the documents prior to destruction.  Within any

longer preservation period proscribed by DTSC, BNSF shall notify DTSC in writing, at least two (2) months prior to destroying any documents prepared or generated pursuant to the terms of this Consent Decree.

    5.6.   Government Liabilities.

       The State of California, and its employees, contractors, agencies, boards, departments or divisions ("State of California"), shall not be liable for any injuries or damages to persons or property resulting from acts or omissions by BNSF or its agents in carrying out activities pursuant to this Consent Decree, nor shall the State of California be held as party to any contract entered into by BNSF or its agents in carrying out activities pursuant to this Consent Decree.

    5.7.   Stop Work Order.

       In the event that DTSC determines that any activity (whether or not pursued in compliance with this Consent Decree) may pose an imminent or substantial endangerment to the health or safety of people on the Shafter Site or in the surrounding area or to the environment, DTSC may order BNSF to stop further implementation of such activity for such period of time needed to abate the endangerment (hereafter "Stop Work Order").  In the event that DTSC determines that any  activities (whether or not pursued in compliance with this Consent Decree) are proceeding without DTSC authorization, DTSC may order BNSF to stop further implementation of  such activity for such period of time needed to obtain DTSC authorization, if such authorization is appropriate.  Any deadline in this Consent Decree directly affected by a Stop Work Order, under this Subsection, shall be extended for the duration of the Stop Work Order.

    5.8.   Emergency Response Action/Notification.

       In the event of any action or occurrence, such as a fire, earthquake, explosion, or human exposure to hazardous substances caused by the release or threatened release of a hazardous substance at the Shafter Site, during the performance of the Remedial Action pursuant to this Consent Decree, BNSF, shall immediately take all appropriate action to prevent, abate, or minimize such emergency, release, or immediate threat of release and shall immediately notify

DTSC's Project Manager.  BNSF shall take such action in consultation with the DTSC Project Manager and in accordance with all applicable provisions of this Consent Decree.  Within seven (7) days of the onset of such an event, BNSF shall furnish a report to DTSC, signed by BNSF's Project Coordinator, setting forth the events which occurred and the measures taken in the response thereto.  In the event that BNSF fails to take appropriate response action and DTSC takes the action instead, DTSC may seek to recover the costs of its response action from BNSF. Nothing in this Paragraph shall be deemed to limit any other notification requirement to which BNSF may otherwise be subject by operation of law.

     5.9.   Extension Requests.

     If BNSF is unable to perform any activity or submit any document within the time required under this Decree, it may, prior to expiration of the time, request from DTSC an extension of time in writing.  The extension request shall include a justification for the delay.  All such requests shall be in advance of the date on which the activity or document is due.  If DTSC determines that good cause exists for the requested extension, it will grant the request and specify a new schedule in writing.  The new schedule shall be deemed incorporated into this Consent Decree and BNSF shall comply with the new schedule.

     6.   SPECIFIC WORK TO BE PERFORMED

     6.1.   Shafter Site Remediation.

     Work to be performed by BNSF under this Consent Decree shall include:

     6.1.1   Land Use Covenant:   In accordance with the RAP and Scope of Work, BNSF shall record upon completion of the Remedial Action Land Use Covenants in a form and content acceptable to DTSC setting forth appropriate restrictions on use and other requirements applicable to the BNSF Parcel and right of way.  The Land Use Covenants shall be enforceable under the laws of California, and BNSF shall provide a current title insurance commitment or some other evidence of title acceptable to DTSC which shows title to the land described in the BNSF Parcel and right of way to be free and clear of all prior liens and encumbrances that could interfere with the implementation or enforcement of the Operation and Maintenance Plan and

Agreement, the provisions of the Land Use Covenants, or the Scope of Work.  BNSF, or any subsequent owner of the BNSF Parcel or the right of way, may apply to DTSC to have the Land Use Covenants modified in accordance with Health and Safety Code Sections 25233 or 25234. BNSF shall not be required to record or enforce any Land Use Covenant applicable to the B&B Parcel.

6.2.   Remedial Design Document and Implementation.

BNSF shall fully implement: 1)  the Excavation Work Plan for soil excavation as approved by DTSC on October 20, 2009, and 2)  upon DTSC approval, the Soil Vapor Extraction System Work Plan.  In addition to completing the above actions, BNSF shall complete all additional actions as set forth in the Scope of Work, including work to: 1) implement the Remedial Action, 2) implement the requirements of the Operation and Maintenance Plan and Agreement, 3) conduct annual groundwater monitoring for up to ten years following DTSC authorization to decommission the soil vapor extraction system, and 4) close and properly abandon the groundwater monitoring wells at the Shafter Site after all necessary monitoring is complete.

6.3    Certification of Completion of Remedial Action.

Within ninety (90) days of the date when BNSF believes that the Remedial Action has been fully performed, BNSF shall schedule and conduct a pre-certification inspection to be attended by BNSF and DTSC.  If, after the pre-certification inspection, BNSF maintains that the Remedial Action has been fully performed, BNSF shall submit a written report requesting that DTSC issue a Certification of Completion of Remedial Action within thirty (30) days of the receipt of said report by DTSC.  In the report, a registered engineer and BNSF's Project Coordinator shall state that the Remedial Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include any required as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of BNSF or the Project Coordinator:

11

846493.1

*To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.*

If, after completion of the pre-certification inspection and receipt and review of the written report, DTSC determines that the Remedial Action or any portion thereof has not been completed in accordance with this Consent Decree, DTSC will notify BNSF in writing of a schedule for the performance of such activities that must be undertaken pursuant to this Consent Decree and the Scope of Work to complete the Remedial Action, or DTSC may require BNSF to submit a schedule for such work to DTSC for approval; provided however, that DTSC may only require BNSF to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the approved RAP and Scope of Work as those terms are defined herein.  BNSF shall perform all activities described in the notice in accordance with the specifications and schedules established therein, subject to the right to invoke the dispute resolution procedures set forth in this Consent Decree.  If DTSC concludes, based on the initial or any subsequent report requesting Certification of Completion of Remedial Action that the Remedial Action has been performed in accordance with this Consent Decree, DTSC will so certify in writing to BNSF. This certification shall constitute the Certification of Completion of the Remedial Action for purposes of this Consent Decree, including, but not limited to, Paragraph 10.1 of this Consent Decree (Termination and Satisfaction).  Certification of Completion of the Remedial Action shall not affect BNSF's other obligations under this Consent Decree.

7.    PAYMENT OF DTSC COSTS

7.1.   Past Response Costs.    Within thirty (30) days of the Effective Date of this Consent Decree, BNSF and/or Hercules shall reimburse DTSC for the sum of $1.5 million dollars ($1,500,000) for Past Response Costs.  BNSF and/or Hercules shall pay the Past Response Costs

by check within thirty (30) days of the Effective Date.  The check shall be made payable to the California Department of Toxic Substances Control, bear the reference to "Brown & Bryant, Inc.-Shafter Facility (100026)" and be mailed to:

> California Department of Toxic Substances Control
> Attention:  Accounting Unit
> P.O. Box 806
> Sacramento, California  95812-0806

A copy of the transmittal letter and a copy of the check shall be sent to BNSF's Project Coordinator and DTSC's Project Manager at the address specified in subparagraph 7.2.4.

7.2    DTSC Future Response Costs.

7.2.1  BNSF will reimburse DTSC for its Future Response Costs incurred in connection with the Work undertaken pursuant to the RAP and the Scope of Work.  DTSC will provide BNSF with invoices for its Future Response Costs on at least a semi-annual basis.  BNSF may provide notice of any challenge to an invoice for Future Response Costs by letter mailed to DTSC within thirty (30) days after BNSF receives the invoice.  The challenge will then be subject to the dispute resolution provisions of this Consent Decree set forth in Section 8.  Unless challenged by BNSF as provided herein, BNSF shall pay to DTSC the Future Response Costs by check within thirty (30) days after receipt of the invoice.  The payments made pursuant to this paragraph shall be made as provided in Paragraph 7.1.

A copy of the transmittal letter and a copy of the check shall be sent to BNSF's Project Coordinator and DTSC's Project Manager at the address specified in subparagraph 7.2.4.

Where BNSF has fully performed its groundwater monitoring obligation under paragraph 6.2 implementation item (3), and DTSC decides to continue that groundwater monitoring thereafter, DTSC agrees that it will not invoice BNSF for DTSC's costs of such continued groundwater monitoring, and such continued groundwater monitoring costs incurred by DTSC shall not be deemed Future Response Costs under this paragraph.  This is not a waiver of any other Future Response Costs.

13

7.2.2  If an invoice for Future Response Costs is not paid by BNSF within (60) days after it is sent by DTSC, BNSF may be deemed to be in material default of this Consent Decree.  Any invoice not paid within sixty (60) days is subject to interest calculated from the date of the billing pursuant to California Health and Safety Code section 25360.1.

7.2.3  If BNSF disputes an invoice, or any part thereof, it shall notify DTSC's Project Manager and attempt to informally resolve the dispute with DTSC's Project Manager and Branch Chief.  If BNSF desires to formally request dispute resolution with regard to the invoice, it shall make a request for dispute resolution as set out below in Section 8.  Such request for dispute resolution shall be made in writing no later than 30 days after the date of receipt by BNSF of the invoice in dispute.  The filing of a notice of dispute shall not stay the accrual of interest on any unpaid costs pending resolution of the dispute.   If the dispute pertains to only a portion of the costs included in the invoice, BNSF shall pay all costs which are not disputed.

7.2.4  Copies of the transmittal letter and check for payment of DTSC Future Response Costs made by BNSF pursuant to subparagraphs 7.2.1 shall be submitted to BNSF's Project Coordinator and DTSC's Project Manager at the following addresses:

> To DTSC:
> Calden R. Koehn, P.E., Project Manager
> San Joaquin & Legacy Landfills Office
> Clovis Office
> Department of Toxic Substances Control
> 1515 Tollhouse Road
> Clovis, California 93611
>
> To BNSF:
> David C. Clark, Director of Environmental Remediation
> BNSF Railway Company
> 920 Southeast Quincy Street
> Topeka, KS  66612-1116
>
> with a copy to:
> Marc A. Zeppetello
> Barg Coffin Lewis & Trapp, LLP
> 350 California Street, 22nd Floor
> San Francisco, CA  94104

14

8.      DISPUTE RESOLUTION

Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  However, the procedures set forth in this Section shall not apply to actions by DTSC to enforce obligations that have not been disputed in accordance with this Section.

8.1.    Notice of Dispute.

Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute.  The period for informal negotiations shall not exceed twenty (20) days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute.  The dispute shall be considered to have arisen when one party sends the other parties a written Notice of Dispute. Unless modified by written agreement of the parties to the dispute, the informal negotiations period will be deemed concluded twenty (20) days after the date of the Notice of Dispute.

8.2.    Statements of Position.

In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by DTSC shall be considered binding unless, within ten (10) days after the conclusion of the informal negotiation period, BNSF shall serve on DTSC a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by BNSF.  Within twenty-one (21) days after receipt of BNSF's Statement of Position, DTSC will serve on BNSF its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by DTSC.  Within ten (10) days after receipt of DTSC's Statement of Position, BNSF may submit a Reply.   An administrative record of the dispute shall be maintained by DTSC and shall contain all statements of position, including supporting documentation, submitted pursuant to this

15

Paragraph.  The Parties' respective submittals shall be provided to DTSC's Director or his or her designee for review.

8.3.   Administrative Decision.

The DTSC Director or his or her designee shall issue a final administrative decision resolving the dispute that shall be based on the administrative record compiled pursuant to Paragraph 8.2.  The decision shall be binding upon all parties involved in the dispute, subject only to the right to seek judicial review of the administrative decision pursuant to Paragraph 8.4.

8.4   Judicial Review.

If BNSF seeks judicial review of any administrative decision made by DTSC pursuant to Paragraph 8.3, such administrative decision shall be reviewable by this Court on the administrative record compiled pursuant to Paragraph 8.2, provided that a motion for judicial review of the decision is filed by BNSF and served on all Parties within ten (10) days of receipt of DTSC's final administrative decision.  If such motion is not timely filed, the decision of DTSC's Director or his or her designee shall be final.  If such a motion is timely filed with this Court, the motion shall include a description of the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree.  DTSC may file a response to BNSF's motion.  BNSF shall have the burden of demonstrating that DTSC's decision is arbitrary and capricious or otherwise not in accordance with law.

8.5.   The invocation of dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of BNSF under this Consent Decree, not directly in dispute, unless DTSC agrees in writing or the Court orders otherwise.

9.      Remedies for Non-Compliance

In the event of non-compliance by BNSF and/or Hercules with the terms of this Decree, DTSC reserves all rights to enforce this Consent Decree or to perform response actions itself and cost recover.  In the event of noncompliance by BNSF and/or Hercules with the terms of this Decree, nothing in this paragraph shall be construed as limiting DTSC from seeking any other

16

available legal or equitable remedies for noncompliance by BNSF and/or Hercules with this Consent Decree .  Moreover, noncompliance by either BNSF or Hercules does not relieve the other defendant of any obligations it may have under this Consent Decree.

DTSC shall give written notice to BNSF and/or Hercules of its/their alleged non-compliance under this Consent Decree and shall specify DTSC's grounds for the alleged non-compliance.  Prior to DTSC taking any actions to enforce this Consent Decree, or to perform response actions itself and seek cost recovery in response to any alleged non-compliance under this Consent Decree, DTSC shall provide BNSF and/or Hercules, as applicable, with an opportunity to rectify the alleged non-compliance under this Decree, or to propose a course of action consistent with this Consent Decree that addresses DTSC's grounds for such alleged non-compliance.

10.   TERMINATION AND SATISFACTION

10.1  This Consent Decree shall remain in full force and effect until DTSC issues a Certification of Completion of Remedial Action by BNSF pursuant to Paragraph 6.3; the Land Use Covenants required by the Paragraph 6.1.1. have been recorded; and BNSF and DTSC have entered an Operation and Maintenance Agreement and Plan that provides for post-certification operation and maintenance by BNSF, including groundwater monitoring and other post-certification actions required by the Scope of Work.  When all such actions have occurred, this Consent Decree shall be terminated except for the provisions of Paragraph 5.5 and sections 7, 11, 12, and 13, and such other continuing rights and obligations of the Parties under this Consent Decree.

11.   COVENANTS NOT TO SUE AND RESERVATIONS OF RIGHTS

11.1. DTSC's Covenant Not to Sue:  In consideration for the Work that will be performed and the payments that will be made under the terms of this Consent Decree, and subject to the reservation of rights set forth in Paragraphs   11.3,  11.4, and  11.5 of this Consent Decree, DTSC covenants not to sue or take administrative action against BNSF or Hercules to compel response actions or recover response costs relating to the Shafter Site based on the release

17

or threatened release of hazardous substances from the Shafter Site as set forth in the Complaint, pursuant to section 107(a) of CERCLA, 42 U.S.C. section 9607 or sections 25355.5, 25358.3, and 25360 of the California Health and Safety Code or to seek penalties under section 25359.2 of the California Health and Safety Code for actions of non-compliance by BNSF or Hercules prior to the effective date of the Consent Decree.  These covenants not to sue shall take effect upon the Effective Date of this Consent Decree.  These covenants not to sue are conditioned upon the satisfactory performance by BNSF and Hercules of their respective obligations under this Consent Decree.  DTSC's covenants not to sue extend only to the BNSF and Hercules in connection with the Shafter Site and do not extend to any other person or entity.

     11.2.  Covenants Not to Sue by BNSF and Hercules.

          11.2.1 Covenants Not to Sue DTSC.  Except for the right to seek judicial review pursuant to Paragraph 8.4 of this Consent Decree, BNSF and Hercules each hereby covenant not to sue and agree not to assert any claims or causes of action against DTSC or its officers and employees regarding any matter relating to the Consent Decree, or with respect to any regulatory action taken by DTSC involving the Shafter Site including, but not limited to:

          11.2.1.1.   any direct or indirect claim for reimbursement from the California Hazardous Substance Account;

          11.2.1.2   any claims against the State under section 107(a) of CERCLA, 42 U.S.C. section 9607, or sections 25355.5, 25358.3, and 25360 of the California Health and Safety Code.

     11.2.2   Reciprocal Covenants Not to Sue.

Except with respect to obligations arising under this Consent Decree and the confidential settlement agreement between BNSF and Hercules regarding the funding of Work at the Site, and except with respect to matters reserved in Paragraphs 11.3, 11.4, and 11.5, BNSF and Hercules each covenants not to sue or assert against the other any claims or causes of action arising out of or relating to environmental contamination existing as of the Effective Date of this Consent Decree at or from the Shafter Site, including, but not limited to any claims under section 107(a) or

18

113 of CERCLA, 42 U.S.C. sections 9607 and 9613, sections 25355.5, 25358.3, and 25360 of the California Health and Safety Code, or under any other state or federal statutory or common law.

11.2.3  BNSF and Hercules Dismissal of Claims.

Upon the Effective Date of this Consent Decree, the Court shall dismiss with prejudice: (1) all claims asserted by BNSF against Hercules in the Consolidated Shafter Cases; and (2) all claims asserted by Hercules against BNSF in the Consolidated Shafter Cases.

11.3.  DTSC's Reservation of Rights.  The Covenant Not to Sue set forth in Paragraph 11.1 above does not pertain to any matters other than those expressly specified therein.  DTSC reserves and this Consent Decree is without prejudice to all rights against BNSF and Hercules with respect to all other matters, including but not limited to, the following:

11.3.1.     Claims based on a failure by BNSF or Hercules or their respective heirs, successors or assignees to meet a requirement of or to otherwise enforce this Consent Decree;

11.3.2     criminal liability;

11.3.3     liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessment incurred by agencies;

11.3.4.     liability for violations of any other local, state or federal law or regulations not covered by this Consent Decree or any liability not covered by this Consent Decree arising from past, present or future ownership, operation, disposal, release, or threat of release of hazardous substances, pollutants, or contaminants, at other sites besides the Shafter Site;

11.3.5     any liability for activities BNSF or Hercules engage in at the Shafter Site that constitute violations of federal or state law and which occur after the Effective Date of the Consent Decree.

11.4.  In addition to the reservations set out in Paragraph 11.3, DTSC reserves, and this Consent Decree is without prejudice to, the right to institute proceedings in this action or in a new action seeking to compel BNSF or Hercules to take a response action or to reimburse DTSC

19

for additional response costs for the Shafter Site if, subsequent to lodging of the Consent Decree, conditions previously unknown to DTSC are discovered, or information, previously unknown to DTSC, is received in whole or in part, and these previously unknown conditions or this previously unknown information indicate(s) that the remedy set forth in the RAP for the Shafter Site is not protective of human health and the environment.

11.5. Further Actions Necessary to Protect Public.

Nothing herein shall limit the power and authority of DTSC, or of any other State agency, to take, direct, or order all actions necessary to protect public health, welfare, or the environment or to prevent, abate or minimize an actual or threatened release of hazardous substances, pollutants, or contaminants, or hazardous or solid waste on, at, or from the Shafter Site.  Further, nothing herein shall prevent DTSC from seeking legal or equitable relief to enforce the terms of this Consent Decree.

12.   WAIVER OF EQUITABLE DEFENSES

In any subsequent administrative or judicial proceeding initiated by DTSC to enforce this Consent decree, neither BNSF nor Hercules shall contest its obligation to fully comply with this Consent Decree; provided, however, that nothing in this Section affects the enforceability of the covenants not to sue set forth in Section 11.  In such proceedings, BNSF and Hercules may raise any defenses that are relevant to the issue of whether or not they have complied with the terms of the Consent Decree.

13.   CONTRIBUTION PROTECTION

With regard to claims for contribution against BNSF or Hercules for matters addressed in this Consent Decree, the Parties agree, and the Court finds as follows:

13.1. This Consent Decree constitutes a judicially approved settlement within the meaning of CERCLA § 113(f)(2) 42 U.S.C.§ 9613(f)(2) pursuant to which BNSF and Hercules have resolved their liability to DTSC.

13.2. This Consent Decree requires that BNSF and/or Hercules pay certain costs and undertake certain response actions at the Shafter Site.

20

13.3.   BNSF and Hercules are entitled to the Contribution Protection provided by CERCLA § 113(f)(2), 42 U.S.C. Section 9613(f)(2), and as may be otherwise provided by law, for the "matters addressed" in this Consent Decree.

13.4.  The "matters addressed" in this Consent Decree include (1) response actions taken pursuant to the ISE Order prior to the Effective Date of the Consent Decree; (2) the Work, (3) payment of DTSC's Past Response Costs relating to the Shafter Site;  and (4) payment of DTSC's Future Response Costs relating to the Shafter Site.

13.4.  Nothing in this Section shall limit DTSC's rights against any third person or entity that is not a party to this Consent Decree, including, without limitation, DTSC's right to enforce a cleanup of the Shafter Site and to recover any response costs associated with that cleanup.

14.    FORCE MAJEURE

BNSF shall cause all Work to be performed within the time limits set forth in this Consent Decree unless an extension is approved by DTSC in writing or performance is delayed by events that constitute an event of force majeure.  For purposes of this Consent Decree, an event of force majeure is an event arising from circumstances beyond the control of BNSF that delays performance of any obligation under this Consent Decree, provided that BNSF has undertaken all appropriate planning and prevention measures to avoid any foreseeable circumstances.  Increases in cost of performing the Work specified in this Consent Decree shall not be considered circumstances beyond the control of BNSF.  For purposes of this Consent Decree, events which constitute a force majeure shall include, without limitation, events such as acts of nature, war, civil commotion, unusually severe weather, labor difficulties, shortages of materials or equipment, delays in obtaining necessary permits due to action or inaction by third parties beyond the control of BNSF, earthquake, fire, flood or other casualty.  BNSF shall notify DTSC in writing immediately after the occurrence of the force majeure event.  Such notification shall describe the anticipated length of the delay, the cause or causes of the delay, the measures taken and to be taken by BNSF to minimize the delay and the timetable by which these measures

21

will be implemented.  If DTSC does not agree that the delay is attributable to a force majeure, then the matter may be subject to the dispute resolution procedures set forth in Paragraph 8 of this Consent Decree.

15.    AMENDMENT OF ISE ORDER

Upon the Effective Date of this Consent Decree, the ISE Order shall be amended as follows: (1) the following parties are no longer parties to the ISE Order and are deleted from the heading and from Section 1.1 of the ISE Order:  (a) The Atchison, Topeka and Santa Fe Railway Company, a Delaware corporation; and (b) Hercules Incorporated, a Delaware corporation; and (2) the following sections are deleted from the ISE Order:  2.1.2 and 2.1.15.

16.    MODIFICATION

Schedules specified in this Consent Decree or Scope of Work for completion of Work may be modified by agreement of DTSC and BNSF.  All such modifications shall be made in writing.

17.    RETENTION OF JURISDICTION

This Court retains jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate, for the construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section 8 hereof.

18.    SIGNATORIES

Each undersigned representative of DTSC, BNSF, and Hercules certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this Decree.

19.    FINAL JUDGMENT

This Consent Decree and its exhibits constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the

Consent Decree.  The Parties acknowledge that, with the exception of a confidential settlement agreement between BNSF and Hercules, there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among DTSC, BNSF and Hercules.

Dated:  _____          DEPARTMENT OF TOXIC SUBSTANCES
                                     CONTROL


                          By:  __/s/ Stewart W. Black_____
                                     STEWART W. BLACK, P.G.
                                     Acting Deputy Director
                                     Brownfields and Environmental Restoration
                                     Program


                          Its:   _____


Dated:  _____          BNSF RAILWAY COMPANY


                          By:   /s/ Gregory C. Fox_____

                          Its    _EUP Operations_____

Dated:  _____          HERCULES INCORPORATED


                          By:   /s/ Paul Raymond_____


                          Its:   _President_____

APPROVED AS TO FORM:

Dated: Dec. 16, 2011_____          BARG COFFIN LEWIS & TRAPP, LLP


                          By:  __/s/ Marc Zeppetello_____
                                     MARC ZEPPETELLO
                                     Attorneys for BNSF Railway Company
                                     23

1

2

3

Dated:  Dec. 14. 2011                          McKENNA LONG & ALDRIDGE

4

By:   /s/ Christian Volz_____
      CHRISTIAN VOLZ

5

      Attorneys for Hercules Incorporated

6

7

Dated:  _12/19/2011_____      KAMALA D. HARRIS
                                       Attorney General of California

8

9

By:  /s/ Susan S. Fiering_____
      SUSAN FIERING

10

Supervising Deputy Attorney General
Attorneys for California Department of Toxic

11

Substances Control

12

13

14

IT IS SO ORDERED.

15

16

Dated:   **January 5, 2012**            _____/s/ Lawrence J. O'Neill__
                                       UNITED STATES DISTRICT JUDGE

17

18

19

20

21

22

23

24

25

26

27

28

24

846493.1